IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHERYL MOYER,                          )
                                       )
                    Plaintiff,         )
                                       )
          v.                           )     Civil Action No.  05-0566
                                       )
JO ANNE B. BARNHART,                   )
COMMISSIONER OF SOCIAL SECURITY,       )
                                       )
                    Defendant.         )

MEMORANDUM ORDER

CONTI, District Judge

### *Introduction*

Pending before the court is an appeal from the final decision of the Commissioner of

Social Security ("Commissioner" or "defendant") denying the claim of Cheryl L. Moyer

("plaintiff") for disability insurance benefits ("DIB") under Title II of the Social Security Act

("SSA"), 42 U.S.C. §§ 405(g), *et seq.*  Plaintiff contends that the decision of the administrative

law judge (the "ALJ") that she is not disabled, and therefore not entitled to benefits, should be

reversed because the decision is not supported by substantial evidence and that the case should be

remanded for the ALJ to consider properly all the evidence as presented.  Defendant asserts that

the decision of the ALJ is supported by substantial evidence.  The parties filed cross-motions for

summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.  The court

will grant defendant's motion for summary judgment because the decision of the ALJ is

supported by substantial evidence.

### *Procedural History*

Plaintiff filed the application at issue in this appeal on a protective basis on November 17, 2000 asserting a disability since February 9, 1997 by reason of asthma, chronic bronchitis, and back pain.  (R. at 50-51, 60-62.)  She was denied at the initial level (R. at 52) and then filed a request for a hearing.  (R. at 56-59.)  On September 17, 2001, a hearing was held before the ALJ. Plaintiff appeared at the hearing and testified.  (R. at 14.)  Plaintiff was represented by an attorney at the hearing.  (R. at 30.)  In a decision dated November 26, 2001 (the "ALJ 2001 decision"), the ALJ determined that the plaintiff was not disabled as of the date her insured status expired – December 31, 1999 – and, therefore, she was not entitled to benefits.  (R. at 14-20.) Plaintiff timely requested a review of that determination on December 12, 2001, and by letter dated March 4, 2002, the Appeals Council denied the request for review.  (R. at 7-8, 371-72.)

On April 30, 2002, plaintiff commenced Civil Action No. 02-824 in this district, seeking judicial review.  The parties filed cross-motions for summary judgment in that case.  The district court denied the motions and remanded the case by an order dated September 30, 2003.  (R. at 373.)  In the memorandum judgment order supporting the remand (the "2003 opinion"), the court outlined three particular issues for an administrative law judge to consider on remand.  First, the court required a reevaluation of the credibility of plaintiff's subjective testimony in light of all the pertinent evidence in the record, particularly that provided by Dr. Sartor.  Second, the court required an express consideration of all relevant medical evidence, noting especially the reports of Drs. Jurenovich, Panariello, and Siegal.  Finally, the court required a reconsideration of the residual functional capacity ("RFC") findings and a reevaluation of steps four and five in the five-step sequential evaluation.

On June 2, 2004, upon receiving the case on remand, a second hearing was held before the ALJ.  (R. at 344-68.)  Plaintiff appeared at the hearing and testified.  (R. at 345.)  A vocational expert (the "VE") also testified.  (R. at 345.)  Plaintiff was represented by a different attorney at this second hearing.  (R. at 346.)  In a decision dated September 13, 2004, the ALJ determined that plaintiff was not disabled as the date her insured status expired and, therefore, she was not entitled to benefits.  (R. at 328-40.)  Plaintiff timely requested a review of that determination and by letter dated March 16, 2005, the Appeals Council denied the request for review.  (R. at 318-21.)  Plaintiff subsequently commenced the present action seeking judicial review.

### *Legal Standard*

The Congress of the United States provides for judicial review of the Commissioner's denial of a claimant's benefits.  42 U.S.C. § 405(g).  This court must determine whether there is substantial evidence which supports the findings of the Commissioner.  42 U.S.C. § 405(g).  "Substantial evidence is 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate.'"  Ventura v. Shalala, 55 F. 3d 900, 901 (3d Cir. 1995)(quoting Richardson v. Perales, 402 U.S. 389 (1971)).  This deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla."  Burns v. Burnhart, 312 F. 3d 113, 118 (3d Cir. 2002).  This standard, however, does not permit the court to substitute its own conclusions for that of the fact-finder.  Id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001)(reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless of whether the court would have differently decided the factual inquiry).

3

### *Plaintiff's Background and Medical Evidence*

Plaintiff is a 46-year-old female, born on September 27, 1960.  (R. at 50.)  According to the record, plaintiff was eligible for insured status through December 31, 1999.  Therefore, plaintiff's disabled status will be reviewed as of that date.  (R. at 15.)  Plaintiff was a 39-year-old female, a "younger individual," as of the date her insured status expired.  20 C.F.R. § 404.1563(c).  She has a high school education, is married, and has one child.  (R. at 163.)  During the relevant work period, i.e., the fifteen-year period preceding December 31, 1999, plaintiff worked as a sales clerk, a cleaner, a circulation clerk, an inventory clerk, and a warranty clerk. (R. at 350-51.)  Plaintiff last worked at an appliance store until February 9, 1997, when she injured her back while working.  (R. at 39, 95, 104.)  By reason of the back injury, she filed a worker's compensation claim with her employer which resulted in a compromise and release dated May 12, 1999, for which plaintiff received a settlement of $8,000.00. (R. at 63-73.)[1]

Plaintiff has seen several doctors with regard to her back condition, including Dr. Randy Stigliano, Dr. David Vermeire, Dr. Michael Jurenovich, Dr. Robert Baker (who performed back surgery in 2002), and Dr. Joel Siegal.  In July 1997 Dr. Stigliano noted plaintiff's diagnosis as mild to moderate degenerative disc disease[2] at the L4-L5 and L5-S1 levels as well as "no significant spinal stenosis and no nerve root impingement."  (R. at 286.)  Dr. Vermeire began treating plaintiff on October 31, 1997, and found a lumbar strain/sprain and early degeneration of

---

[1]The record does not contain any reports or other medical documents relating to plaintiff's medical care from the time of her back injury on February 9, 1997, through July 2, 1997.

[2]Degenerative disease is "an illness resulting from the deterioration of tissues and organs, characteristic of aging or repetitive injury."  Taber's Cyclopedic Medical Dictionary 547 (20th ed. 2005).

the L4-5 and L5-S1 intervertebral discs.  On October 31, 1997, he ordered physical therapy for plaintiff to be performed three times per week.  (R. at 180.)[3]

In December 1998 plaintiff saw Dr. Jurenovich, an orthopedic surgeon, for her back condition.  At this time, plaintiff asked to be released to return to work.  (R. at 194.)  Dr. Jurenovich released plaintiff with one restriction: not to move heavy appliances.  (R. at 198.)  Dr. Jurenovich also advised plaintiff to restart physical therapy.  (R. at 194.)

In February, March, and May 2001, after the date plaintiff's insured status expired, plaintiff saw Dr. Siegal.  He noted that there was nothing obviously pathological in plaintiff's MRIs to cause the level of pain that plaintiff reported.  (R. at 299-303.)  Dr. Siegal did recommend, however, continued physical therapy for plaintiff.  (R. at 301.)  Plaintiff attended physical therapy pursuant to Dr. Siegal's recommendation from June 12, 2001, through August 17, 2001, at Keystone Rehabilitation Systems.[4]  (R. at 304-14.)  On August 17, 2001, plaintiff was discharged from physical therapy with the recommendation to visit a back clinic due to her lack of progress.  (R. at 304.)

In addition to her back problems, plaintiff has had breathing problems.  In September 2000 – more than eight months after the date her insured status expired – she was diagnosed with chronic obstructive pulmonary disease ("COPD") when she was admitted to the hospital by Dr. Stigliano for acute exacerbation of bronchitis.  (R. at 203, 253, 261.)  She has also been seen by

---

[3]Records from Momentum Therapeutics reflect that plaintiff attended 41 of 59 of the scheduled physical therapy appointments recommended by Dr. Vermeire in 1997.  (R. at 272.)

[4]Plaintiff attended 14 of 16 of the scheduled appointments recommended by Dr. Siegal. (R. at 304.)

Dr. Panariello for asthma and COPD.  (R. at 268-71.)  Plaintiff's medical records reflect no complaints of breathing difficulties prior to September 2000.

### *Discussion*

Under Title XVI of the SSA, a disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A). Similarly, a person is unable to engage in substantial gainful activity when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 1382c(a)(3)(B).

In order to make a disability determination under the SSA, a five-step sequential evaluation must be applied.  20 C.F.R. §§ 404.1520, 416.920.  The evaluation consists of the following stages: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the claimant's severe impairment meets or equals the criteria of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if not, whether the claimant's impairment prevents him from performing his past relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy in light of his age, education, work experience and residual functional capacity.  20 C.F.R. §§ 404.1520, 416.920; Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000). If a plaintiff fails to meet the burden of proving the requirements in the first four steps, the

administrative law judge may find that the plaintiff is not disabled.  Burns v. Burnhart, 312 F.3d
at 119.  The Commissioner is charged with the burden of proof with respect to the fifth step in
the evaluation process.  Id.

In the instant case, the ALJ found that on or before December 31, 1999, the date
plaintiff's insured status expired:  (1) plaintiff had not engaged in substantial gainful activity
since the alleged onset of disability on February 9, 1997; (2) plaintiff suffered from COPD and
degenerative disc disease of the lumbar spine, which were severe; (3) these impairments did not
meet or medically equal one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1; (4)
plaintiff retained the residual functional capacity to perform light work and could return to some,
but not all, past relevant work (R. at 336-37); and (5) alternatively, she could, at a minimum,
perform sedentary work and there were other jobs in the national economy that plaintiff could
perform at the sedentary level.  (R. at 337-38.)

Prior to evaluating steps four and five, the ALJ determined plaintiff's RFC.  The ALJ
determined that plaintiff had the RFC to perform all the postural activities of light work on an
occasional basis.  (R. at 336.)  Alternatively, if plaintiff was not able to perform light work, the
ALJ found that plaintiff retained the RFC to perform sedentary work and that jobs exist in the
national economy in large numbers for sedentary work.  (R. at 336.)  Plaintiff alleges that
defendant erred in determining that plaintiff's statements concerning her impairments and the
impact on her ability to work on the date her insured status expired were not entirely credible; in
failing to give weight to much of the evidence provided by Dr. Sartor; in failing to develop fully
the record; and in relying upon the testimony of the VE concerning a hypothetical question which
plaintiff contends did not include all limitations of record.  Defendant argues that the ALJ did not

err and that substantial evidence supports the ALJ's decision.  Each of plaintiff's arguments will

be considered.

1.      **Whether the ALJ erred in determining that plaintiff's subjective complaints were
        not fully credible.**

Plaintiff argues that the ALJ erred in determining that plaintiff's allegations regarding her

pain were not totally credible to the extent that she claims she was precluded from all work.  (R.

at 334.)  Plaintiff also argues that the ALJ failed to comply with the applicable Social Security

Ruling ("SSR") 96-7p which sets forth guidance for evaluating a claimant's subjective

complaints.  After a review of the relevant law and the record, the court disagrees.

The purpose of SSR 96-7p "is to clarify when the evaluation of symptoms, including

pain, under 20 C.F.R. 404.1529 and 416.929 requires a finding about the credibility of an

individual's statements about pain. . . ."  SSR 96-7p (Purpose statement).  Pursuant to 20 C.F.R.

§ 404.1529, the Commissioner will consider all "symptoms, including pain," in the disability

determination.  Statements of pain alone are not enough to establish a disability; the claimant

must also present objective medical evidence to show that the medical impairment "could

reasonably be expected to produce the pain or other symptoms alleged. . . ."  20 C.F.R. §

404.1529(a); SSR 96-7p.  Once the Commissioner has determined from the "medical signs or

laboratory findings" that the claimant has an impairment which could reasonably produce the

pain, then the Commissioner must determine how the pain limits the claimant's capacity for

work.  The Commissioner will consider evidence from the treating, examining and consulting

physicians, observations from agency employees, and other factors such as the claimant's daily

activities, descriptions of the pain, precipitating and aggravating factors, type, dosage,

effectiveness, and side effects of medications, treatment other than medication, and other measures used to relieve the pain.  20 C.F.R. § 404.1529(c); SSR 96-7p.  The Commissioner also will look at inconsistencies between the claimant's statements and the evidence presented.  20 C.F.R. § 404.1529(c)(4).

Initially in the ALJ 2001 decision, when considering plaintiff's application, the ALJ determined that plaintiff's subjective complaints were not fully credible.  On remand, the ALJ was required to revisit that determination.  In particular, the district court noted that the ALJ should "consider and address all of the pertinent medical evidence of record and must explain his rejection of any of that evidence."  2003 opinion at 9 (emphasis in original).  Upon remand, the ALJ determined that the medical evidence contradicted plaintiff's testimony to the extent plaintiff alleges being totally precluded from all work.  (R. at 334.)  The ALJ found that plaintiff's subjective complaints were not fully credible to the extent plaintiff contends she can do no work.  (R. at 334.)  The ALJ gave more credit to plaintiff's testimony in the decision at issue here than he had in the ALJ 2001 decision.  In the decision at issue, the ALJ gave plaintiff the benefit of the doubt with regard to her COPD and asthma difficulties by applying "the usual environmental restrictions" associated with these kinds of difficulties.  (R. at 337.)  For example, the ALJ in the hypothetical asked the VE to consider the need for a work environment with no dust, smoke, fumes, etc.  (R. at 363.)  In addition, when considering plaintiff's ability to work in evaluating the fifth step of the sequential evaluation, the ALJ, in the hypothetical, increased the restriction from light exertion to sedentary work.  (R. at 337.)   The ALJ found, however, that even allowing for further exertional restrictions, plaintiff would still not be disabled because

there are other jobs in the national economy existing in large numbers which plaintiff could perform.  (R. at 337.)

Substantial evidence supports the ALJ's finding that plaintiff's subjective complaints were not fully credible to the extent that plaintiff related that she could do no work.  The ALJ, as developed more fully below, discussed all relevant medical evidence in detail in the decision at issue.  In particular, the ALJ commented on the January 29, 2001, functional assessment of plaintiff by Dr. Sartor.  (R. at 336.)  Dr. Sartor noted that plaintiff had no obvious severe pain. (R. at 250.)  Notes from Dr. Sartori's session with plaintiff indicate that plaintiff reported "breathing problems" since September 2000.  (R. at 252.)  Additionally, Dr. Sartor filled out the functional assessment form with plaintiff's statements.  (R. at 256.)  For example, the lifting section reads, "states she can only lift or carry 1-2 lbs."  (R. at 256.)

One factor to be considered in assessing credibility is whether allegations of pain are supported by objective medical evidence.  See 20 C.F.R. § 404.1529.  Objective medical evidence is a useful indicator to assist the ALJ in making reasonable conclusions about the intensity and persistence of symptoms such as pain.  See 20 C.F.R. § 404.1529(c).  The objective medical evidence of record here, provided by several medical practitioners, does not support plaintiff's contentions concerning the pain she experienced.  For example, Dr. Vermeire prescribed a TENS[5] unit on December 19, 1997.  (R. at 179.)  Plaintiff, however, testified that she did not obtain the unit until 2000, after the date her insured status expired.  (R. at 356.) Plaintiff's delay in obtaining this treatment, which was prescribed specifically to relieve pain she

---

[5]"Transcutaneous electrical nerve stimulation: the application of mild electrical stimulation to skin electrodes placed over a painful area.  It alleviates pain by interfering with transmission of painful stimuli."  Taber's Cyclopedic Medical Dictionary 2218 (20th ed. 2005).

may have been experiencing, undermines her complaints about the severity of intensity of the pain.  SSR 96-7p, 1996 SSR LEXIS 4, at *21-22.  In addition, Dr. Siegal noted in March 2001 that plaintiff's MRI "does not show any significant anatomical cause for her pain and discomfort."  (R. at 301.)  Dr. Siegal again noted in May 2001 that there was nothing "obviously pathologic[al] to be causing the pain and discomfort."  (R. at 299.)

Dr. Baker performed surgery (microscopic lumbar discectomy) on plaintiff on May 22, 2002 – more than two years after the date her insured status expired – for treatment of degenerative disc disease.  (R. at 430-31.)  Dr. Baker noted, in postoperative follow-up notes, that plaintiff was taking Vicodin which he did not prescribe.  Plaintiff's resort to Vicodin provides some support to the claim that she was experiencing pain; however, that it was not prescribed by her orthopedic surgeon and, in Dr. Baker's opinion, that she was addicted to hydrocodones undercuts this support.  (R. at 457.)  Further weakening plaintiff's allegations of pain during the insured period (prior to December 31, 1999), is the fact that plaintiff was not taking pain medications consistently throughout that period.  Plaintiff was prescribed hydrocodone by Dr. Leon Stein in 1997 –  a five-day supply in February 1997, a five-day supply in March 1997, and a five-day supply in May 1997.  (R. at 122.)  In June 1997 a different doctor, Dr. Spadafore, prescribed hydrocodone at a lower dosage for a total of seven days.  (R. at 122.)  Because there is no medical evidence of record prior to July 1997, there is no clear reason for the differing prescriptions.  The next prescription of record for pain medication was approximately two years later, on July 19, 1999 – a seven-day supply – by Dr. Ernest Swanson at the lower dosage previously prescribed by Dr. Spadafore.  (R. at 125.)  Plaintiff did not proffer any medical evidence from Dr. Swanson.  Plaintiff's treating physician, Dr. Stigliano, first prescribed

11

hydrocodone on December 1, 1999, thirty days prior to the date her insured status expired.  (R. at 126.)  Plaintiff noted side effects from the hydrocodone of sleepiness/drowsiness; however, all complaints of the side effects are after the date her insured status expired.  (R. at 88, 100, 143.)  Due to the history of plaintiff's prescription records prior to the date her insured status expired, i.e., the two-year gap in pain medication and the lack of complaints of side effects prior to the date her insured status expired, the ALJ did not err in failing to comment about the effects of plaintiff's medication as of the date her insured status expired.

The Commissioner may consider the testimony of others in determining the credibility of plaintiff's complaints.  SSR 96-7p, 1996 SSR LEXIS 4, at *14.  Here, typewritten and handwritten letters were submitted on behalf of plaintiff by friends and family members regarding plaintiff's activities.  (R. at 153-52, 404-08.)  The letters, however, are dated between 2001 and 2004, more than two and three years after the date her insured status expired and generally do not contain specifics about her condition prior to December 31, 1999.  The letters do not provide substantial evidence in support of plaintiff's argument due to the lack of specificity in the letters, especially given the nature of her degenerative disease, i.e., that it progressively worsens over time.  Also, the information was not offered under sworn testimony during either hearing before the ALJ.

Plaintiff argues that the ALJ erred in finding that plaintiff's ability to drive one to two times per day undercuts her assertions of disabling pain.  Plaintiff asserts that no such admission of being able to drive one to two times per day is in the record.  Id.  The questionnaire attached to plaintiff's original application for disability benefits, however, included the following questions and her answers:

Q: Do you drive? A: Yes
Q: If yes, how often and for how long? A: 1-2 times per day

(R. at 82.)  Plaintiff also indicated that she "get[s] bad back pain if driving to [sic] much."  Id.

This questionnaire was completed on September 29, 2000, ten months after the date plaintiff's

insured status expired.  The ALJ did not err in considering plaintiff's ability to drive as a

contradiction of her claim of being disabled as of December 31, 1999.

There is substantial evidence on the record that plaintiff does have an impairment which

would cause pain, but not to the degree about which plaintiff complains.  Therefore, the ALJ did

not err in determining that plaintiff's subjective complaints were not fully credible.

**2.**     **Whether the ALJ appropriately evaluated all relevant medical evidence and
          sufficiently explained his reasons for not crediting the findings of Dr. Sartori.**

On remand, the ALJ was directed to consider all relevant medical evidence and if any of

that evidence was rejected, to provide an explanation for the rejection.  An administrative law

judge is required to consider all evidence and must provide an explanation for discounting any

evidence which is rejected.  Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999).  Generally,

more weight is given to the findings of the treating source, "since these sources are likely to be

the medical professionals most able to provide a detailed, longitudinal picture of [plaintiff's]

medical impairment(s). . . ."  20 C.F.R. § 404.1527(d)(2).  When the treating source's opinion is

well-supported by medical evidence "and is not inconsistent with the other substantial evidence"

on the record, it will be given controlling weight.  Id.

**A.     Dr. Jurenovich**

In the decision at issue, the ALJ discussed the treatment records of Dr. Jurenovich, as

they relate to plaintiff's subjective testimony.  While Dr. Jurenovich's records reflect plaintiff's

report of pain in the lower back, radiating down her leg, Dr. Jurenovich provided no functional

limitation for plaintiff. (R. at 334.)   The ALJ noted that Dr. Jurenovich's records were not

"significantly helpful regarding the residual functional capacity during the relevant time period

[February 9, 1997 through December 31, 1999]." (R. at 334.)  Dr. Jurenovich saw plaintiff for a

new consultation on December 16, 1998 and noted plaintiff reported that she "wants to try to

return to work on a light-duty basis." (R. at 194.)  He recommended plaintiff restart some

physical therapy. (Id.)  Dr. Jurenovich certified that plaintiff was approved to return to work as

of December 16, 1998 with a restriction of "No Moving Heavy." (R. at 198.)  Dr. Jurenovich

noted that the x-ray report of January 27, 1999, showed x-rays of plaintiff's lumbar spine that

were essentially negative for any acute fractures or dislocations. (R. at 188.)  The ALJ, therefore,

did not err in his evaluation of the evidence provided with respect to Dr. Jurenovich.  That

evidence, while it provided support for the fact that plaintiff reported pain, was not sufficient to

contradict the ALJ's assessment of plaintiff's credibility regarding her assertion that she was

precluded from all work.

  **B.**  **Dr. Siegal and Dr. Panariello**

  In the decision at issue, the ALJ discussed the notes and reports of Drs. Siegal and

Panariello as they related to plaintiff's residual functional capacity.  In March 2001, Dr. Siegal

noted that the MRIs of plaintiff's back did not show "any significant anatomical cause for her

pain and discomfort." (R. at 301.)  On May 22, 2001, Dr. Siegal reported that plaintiff

complained of "considerable back pain" while noting that the MRI's of 1999, 1997, and 2000

showed some degenerative changes but "nothing obviously pathologic[al] to be causing the pain

and discomfort." (R. at 299.)

14

While not referencing Dr. Panariello by name, the ALJ discussed Dr. Panariello's records with regard to plaintiff's breathing problems.  (R. at 335.)  The ALJ noted that there was no indication of a diagnosis of COPD prior to September 2000 and that a subsequent pulmonary function test given in January 2001 was normal.  (R. at 335.)  Nevertheless, the ALJ attributed a breathing disorder, which is a severe impairment, to plaintiff as of the date her insured status expired, December 31, 1999 (R. at 335), and based his conclusion that plaintiff was not precluded from all work upon a hypothetical that gave some credence to plaintiff's subjective complaints of pain.

The ALJ also referred to the notes of Dr. Panariello.  Dr. Panariello's discharge instructions for plaintiff were given solely for the day plaintiff was discharged, April 3, 2001. (R. at 288-89.)  Those instructions included that, on that day, plaintiff should not drive a car, should not vacuum for one week following, and should not lift over 15 lbs.  (R. at 289.) Significantly, plaintiff was seen by Dr. Panariello for a diagnostic bronchoscopy.  Therefore, any restrictions given were not related to plaintiff's back problems.  (R. at 288.)  The ALJ, therefore, did not err in considering the reports of Drs. Siegal and Panariello.  Those reports did not support plaintiff's subjective complaints of pain – at least to the extent that she alleged she was precluded from all work.

### C.     Dr. Vermiere

The ALJ also discussed the medical records of Dr. Vermeire.  On December 19, 1997, Dr. Vermeire had noted that plaintiff reported relief when using a TENS unit at physical therapy and prescribed a TENS unit.  (R. at 179.)  On January 14, 1998, he noted plaintiff attended only 20 of 31 appointments.  (Id.)  Dr. Vermeire's records indicated that plaintiff showed "good

flexion and extension of her lower back . . . as of March 1998." (R. at 335.)  Dr. Vermeire noted

on April 22, 1998, that plaintiff had "a little tenderness and mild limitation of motion" according

to plaintiff's complaints and physical examination.  (R. at 177.)  Plaintiff did not obtain the

TENS unit which was prescribed in 1997 until 2000.  (R. at 356.)  Dr. Vermiere's records

support the ALJ's finding that plaintiff's subjective complaints of pain are not fully credible, to

the extent that she claims she was precluded from all work.

     **D.**     **Dr. Stigliano**

     The ALJ discussed the medical records of Dr. Stigliano and gave great weight to his

findings, as Dr. Stigliano was plaintiff's treating physician beginning in December 1997.  (R. at

335.)  Dr. Stigliano completed his first of two functional assessments in November 2000,

approximately eleven months after plaintiff's last date insured.  (R. at 335, 235-38.)  Dr.

Stigliano, in that first assessment, limited plaintiff to carrying and lifting up to 20 pounds

frequently, i.e., from one-third to two-thirds of an eight-hour day, with no restrictions for

standing, sitting, walking, pushing or pulling and occasional bending, kneeling, stooping,

crouching and climbing.  (R. at 235-36.)  Additionally, in November 2000 Dr. Stigliano did not

place any environmental restrictions on plaintiff.  (Id.)  The ALJ noted that Dr. Stigliano's

records did not indicate a diagnosis of COPD prior to November 2000.  (R. at 335.)

     Dr. Stigliano's second functional assessment dated January 29, 2002, differed from the

prior assessment.  Plaintiff was assessed as able to lift and carry up to 20 pounds occasionally,

i.e., two to three cumulative hours, was limited to standing and walking less than two hours, and

was limited to sitting for less than six hours.  (R. at 410.)  Additionally, Dr. Stigliano concluded

that plaintiff's ability to push and pull were limited in both upper and lower extremities, but Dr.

Stigliano did not furnish the nature and degree of such limitations.  (<u>Id.</u>)  Dr. Stigliano noted that plaintiff should never climb, crouch, or crawl and only occasionally balance, stoop, and kneel. (R. at 411.)  Dr. Stigliano also noted the environmental restrictions of poor ventilation, temperature extremes, chemicals, wetness, dust, fumes, odors, and gases.  He, however, provided no explanation with respect to the amount of environmental matters to which plaintiff could or could not be exposed.  (<u>Id.</u>)  Notably, no supportive medical findings were provided on the functional assessment save the conclusory statement that, "plaintiff has severe COPD."  (<u>Id.</u>)  It is reasonable to infer that the difference in the two assessments is either due to the worsening of plaintiff's condition after her insured status expired, or the diagnosis of COPD noted by Dr. Stigliano after that date.  The ALJ did not err in giving great weight to the findings of Dr. Stigliano, which support the ALJ's finding that at least through the period ending on December 31, 1999, the date plaintiff's insured status expired, plaintiff's subjective complaints of pain were not fully credible to the extent that she claims she was precluded from all work.

       **E.**    **Dr. Sartor**

Finally, the ALJ discussed, in detail, the report by Dr. Sartor.  Dr. Sartor completed a functional assessment in January 2001 which noted many limitations.  (R. at 336.)  The ALJ gave no weight to that assessment because: (1) the findings were inconsistent with Dr. Sartori's actual examination; (2) the assessment appears to be based primarily on plaintiff's subjective statements; and (3) Dr. Sartor examined plaintiff once, more than one year after the expiration of her insured status.  (R. at 336.)

Upon reviewing the record, this court notes, in particular, that Dr. Sartor reported that plaintiff's myelograms[6] and MRI's "have not proven discogenic disease." (R. at 248.) Dr. Sartor also noted that there was no evidence that plaintiff had seen a neurologist or an orthopedist. (Id.) Additionally, Dr. Sartor noted that plaintiff was able to sit up at a ninety-degree angle without "having any obvious severe pain." (R. at 250.) He also noted that a pulmonary function study which had been performed on January 19, 2001 was perfectly normal. (Id.) The functional assessment relied upon by plaintiff, dated January 29, 2001, contains plaintiff's statements, not Dr. Sartori's medical opinion as stated in the report dictated on February 5, 2001. (R. at 247-58.)

An administrative law judge can reject a treating physician's opinion, and thus the opinion of a physician who examined plaintiff only once, where the opinion is (1) not well-supported by medically acceptable clinical and laboratory diagnostic techniques, or (2) inconsistent with other substantial evidence of record. 20 C.F.R. § 404.1527(d)(2). The ALJ did not err in giving no weight to the functional assessment of Dr. Sartor because the assessment was inconsistent with Dr. Sartori's own dictated report and the totality of the medical evidence of record and the form was filled out with plaintiff's statements, not Dr. Sartori's actual assessment. Therefore, there is substantial evidence in the record to support the ALJ's determination that Dr. Sartori's report should be given no weight.

**3.    Whether the ALJ has a responsibility to develop the record.**

Plaintiff argues that the ALJ erred by not requesting an opinion from the orthopedic physician, Dr. Jurenovich. It is the duty of an administrative law judge to develop the record

---

[6]A myelogram is "a radiograph of the spinal cord and associated nerves." Taber's Cyclopedic Medical Dictionary 1414 (20th ed. 2005).

18

fully and fairly, even when a plaintiff is represented by counsel, although the duty is heightened when a plaintiff is not represented.  Schwartz v. Halter, 134 F.Supp.2d 640, 656 (E.D. Pa. 2001).  An administrative law judge, however, does not have a duty to search for relevant medical evidence, as that would shift the burden of production from the plaintiff.  See 20 C.F.R. 404.1512(a).  An administrative law judge will only recontact medical sources when the evidence received is inadequate to determine whether a plaintiff is disabled.  See 20 C.F.R. 404.1512(e).

Plaintiff argues that Dr. Jurenovich was the orthopedic surgeon and main treating physician for plaintiff's back problem and that the ALJ should have given Dr. Jurenovich's opinion more weight than that of Dr. Stigliano.  The medical evidence of record reflects, however, that Dr. Jurenovich saw plaintiff from only December 1998 through May 1999 – a period of five months, (R. at 182-99), unlike Dr. Stigliano who treated plaintiff from December 1997 through May 2004.  (R. at 335, 588.)  Although Dr. Jurenovich is an orthopedic surgeon, the record reflects that Dr. Baker performed back surgery in 2002 on plaintiff – not Dr. Jurenovich – and Dr. Baker's reports are included in the record and are consistent with the ALJ's determination.  (R. at 412-62.)  Plaintiff's reliance on Dr. Jurenovich's opinion, therefore, is misplaced.

When there is substantial medical evidence in the record documenting plaintiff's functional abilities, the failure to request one opinion does not nullify the administrative law judge's findings.  Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004).  Here there is substantial medical evidence in the record which fully develops plaintiff's functional abilities.  A great deal of the medical evidence of record was proffered by Dr. Stigliano.  In addition, Dr. Stigliano appears to be the only physician who has treated plaintiff consistently since the onset of

her back injury and COPD/asthma and that relationship entitled his opinion to be given weight by

the ALJ.

> Generally, the longer a treating source has treated [the claimant] and the
> more times [the claimant has] been seen by a treating source, the more
> weight [the administrative law judge] will give to the source's medical
> opinion.  When the treating source has seen [the claimant] a number of
> times and long enough to have obtained a longitudinal picture of [the
> claimant's] impairment, [the administrative law judge] will give the
> source's opinion more weight than we would give it if it were from a
> nontreating source.

20 C.F.R. § 404.1527(d)(2)(i).  Therefore, the failure to request further information from Dr.

Jurenovich was not an error by the ALJ.

**4.    Whether the question posed to the VE included all the limitations supported by the record.**

The hypothetical question posed by an administrative law judge to a vocational expert

must reflect all of a plaintiff's impairments supported by the record; otherwise, the vocational

expert's testimony cannot be considered substantial evidence.  Ramirez v. Barnhart, 372 F.3d

546, 552 (3d Cir. 2004).  On remand, the ALJ specifically found, at step four, that plaintiff would

have been able to perform her past work as an inventory clerk.  (R. at 336.)  The ALJ found

plaintiff to have a RFC of light work with the added restriction of avoiding exposure to

pulmonary irritants.  (R. at 410.)  The hypothetical question relating to light work asked by the

ALJ of the VE required the VE to assume "an individual 43 years of age with a high school

education," with the work experience of plaintiff, with pulmonary restrictions, and limited to

occasional "crawling, crouching, balancing, and climbing."  (R. at 363.)  These restrictions are

consistent with light work restrictions.  (R. at 362-63.)  The VE testified that under these

restrictions, plaintiff could return to work as a warranty clerk and inventory clerk.  (R. at 363-64.)

20

The ALJ found nothing indicative of an inability to perform <u>some</u> of plaintiff's past relevant work.  The VE testified that plaintiff's past job as an inventory clerk required the RFC of light exertion.  (R. at 363.)  The VE also testified that the exertional and skill level of plaintiff's previous work at the appliance store was skilled, or semi-skilled and light (the VE noted that his experience leads him to believe that a sales clerk at an appliance store should be heavy exertion); as a warranty clerk, the level was semi-skilled, light exertional; as a general clerk, the level was semi-skilled and light; and as an inventory clerk, the level was semi-skilled and light.  (<u>Id.</u>)

Even if plaintiff had not been found capable of light work, the ALJ found that she also had the ability to perform jobs existing in large numbers in the national economy.  At step five, the ALJ found that plaintiff retained the RFC to perform sedentary work (giving more weight to plaintiff's subjective claims of pain than at step four) with the usual pulmonary restrictions.  (R. at 337-38.)  The ALJ posed hypothetical questions with varying degrees of restriction, including a person restricted to sedentary work with a sit/stand option and unable to engage foot controls. The questions posed by the ALJ to the VE and relied upon by the ALJ were not only supported by the record but also provided more restrictions than the medical evidence required.  Because the VE was able to identify jobs existing in the national economy in large numbers for both light and sedentary jobs which plaintiff could perform, substantial evidence supports the ALJ's finding that plaintiff was not disabled as of the date her insured status expired.

### Conclusion

Based upon the evidence of record, the parties' arguments and supporting documents filed in support and opposition to their respective motions, this court concludes that substantial

evidence supports the ALJ's finding that plaintiff was not disabled as of the date her insured status expired.  The decision of the ALJ denying plaintiff's application for DIB is affirmed.

Therefore, plaintiff's motion for summary judgment (Docket No. 7) is **DENIED**, and defendant's motion for summary judgment (Docket No. 9) is **GRANTED**.

**IT IS ORDERED AND ADJUDGED** that judgment is entered in favor of defendant, Jo Anne B. Barnhart, Commissioner of Social Security, and against plaintiff, Cheryl Moyer.

The clerk shall mark this case as closed.

By the court:


/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

Dated: August 15, 2006

cc: counsel of record

22